IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Valerie Kent, | ) | Civil Action No. 2:05-1645-DCN-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **ORDER and OPINION** |
| Jo Anne B. Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Robert S. Carr's recommendation that this court reverse the Commissioner's decision denying plaintiff disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The record includes a Report and Recommendation ("Report") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

## I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on January 21, 2003 (ALJ decision 16), alleging a disability beginning on April 15, 2001, due to osteoarthritis, depression, a back disorder, back and leg trauma, sciatica, degenerative disc disease, pelvic problems and piriformis syndrome. (Id. at 17.) Plaintiff's application was initially denied and denied again upon reconsideration. (Id. at 16.) Plaintiff filed a timely request for a hearing, and Administrative Law Judge Ronald Dickinson (the "ALJ"), conducted the hearing and denied plaintiff's application on July 15, 2004. The ALJ finding became the final decision of the Commissioner when it was approved by the Appeals Council on April 12, 2005. (Id. at 16.)

## II.  PERTINENT FACTS

Plaintiff was born on July 1, 1958. (Tr. at 553.)  At the time of the administrative hearing, plaintiff was 45 years old. (Id.)  Her past work experience includes employment as an administrative assistant, car salesperson, leasing agent, office manager, and billing assistant.  Plaintiff has a high school education as well as additional education in the field of cosmetology. (ALJ decision at 17.)

On March 15, 2000, plaintiff fell at work and suffered injury to her left ankle, back, right hip and leg. (Tr. at 561.)  Approximately six to seven days after the fall, plaintiff began experiencing pain in her leg, swelling, and muscle spasms. (Tr. at 560.)  In May 2001, a CT scan of plaintiff's head revealed mild mastoid disease, but no acute intracranial abnormality or evidence to suggest fibroid mastoiditis. (ALJ decision at 17.)

Plaintiff presented to Dr. Howard Stern for an independent medical examination in June 2001.  Dr. Stern reported in his evaluation that plaintiff was "strongly positive for symptom magnification," and stated that with symptom magnification, "subjective history given by [plaintiff] with regards to [her] personal injuries can not be relied upon as being genuine, accurate or truly reflective of the subjective experiences of the individual with regards to his or her injuries." (ALJ decision at 18.)

In August 2001, plaintiff complained to Dr. Katherine Smallwood, of ongoing symptoms of depression and anxiety which were aggravated by chronic pain and placed on Prozac. (Id.)  Plaintiff returned to Dr. Smallwood in August 2001, complaining that something "popped" in her back during physical therapy.  After a physical examination revealed an antalgic gait on the right side, plaintiff was assessed with having lower back

2

pain, lumbar radiculitis, sacroilitis, and sacroiliac strain. (Id.)

In October 2001, Dr. Stephen Eads wrote a letter, at plaintiff's request, concerning her chronic back and pelvic pain. In his letter, Dr. Eads stated that when he first examined plaintiff in August 1999, she had no complaints of back or pelvic pain. However, upon her return in August 2000, after her accident had occurred, a physical examination revealed significant pelvic tenderness. In October 2001, plaintiff was still complaining of continuing back and pelvic pain. (Id.)

Dr. Stern wrote an addendum to his June 2001 evaluation in response to Dr. Eads' letter in November 2001. In his addendum Dr. Stern stated that Dr. Eads did not document any positive objective findings upon which to base either a diagnosis or medical opinion pertaining to the musculoskeletal claim. (Id.)

A MRI of the lumbar spine in April 2002 revealed no evidence of a herniated nucleus pulposus or spinal stenosis, but there was evidence of degenerative disc disease at L1-2. (Id.) MRI of the cervical spine revealed small central disc protrusion at C6-7, which was similar to a study from March 2000. (Id.)

In August 2002, plaintiff complained of lower back pain and right lower extremity pain. A physical examination again revealed a right antalgic gait as well as decreased range of motion of her cervical spine and moderate decreased range of motion of her lower back. (Id.) Lumbar x-rays showed mild degenerative disc disease at L4-5 and L5-S1. Plaintiff was assessed with lower back pain and right lower extremity pain of uncertain etiology, and further tests were ordered. (Id.) Later in August 2002, a MRI of the lumbar spine showed mild degenerative disc space narrowing at L1-2, and plaintiff

underwent an EMG to rule out right lower extremity radiculopathy.  The study was negative for lumbrosacral radiculopathy, lumbrosacral plexopathy, sciatic neuropathy, and peripheral neuropathy. (ALJ decision at 19.)

In September 2002, plaintiff was assessed with neck/back pain with possible cervical radiculopathy. (Id.)  Plaintiff complained of acute exacerbation of her right lower extremity in October 2002. (Id.)

In November, plaintiff was given a caudal epidural steroid injection.  Afterward, plaintiff reported that the pain and pressure in her tailbone were significantly improved, but she continued to have lower back pain.  However, OxyContin was providing her with enough relief to perform many daily routine activities. (Id.)

In January 2003, plaintiff continued complaining of symptoms, but her physical examination was unchanged.  Plaintiff was assessed with persistent lower back pain secondary to degenerative disc disease and piriformis syndrome. (Id.)

Plaintiff went to an internist for an initial evaluation in May 2003, which revealed a normal gait and station.  At that appointment plaintiff was diagnosed with lower back pain, osteoarthritis, and depression.  Also in May 2003, plaintiff had a morphine pump implanted into her. (Id.)

In September 2003, plaintiff presented to Dr. Brosman with complaints of edema in her lower extremities, muscle spasms of her lower back, and tenderness in her upper and lower legs.  Dr. Brosman opined that plaintiff's myalgias represented a pattern that was consistent with fibromyalgia. (ALJ decision at 20.)  Also in September, plaintiff went to Hilton Head Regional Medical Center for refill and reprogramming of her

intraspinal morphine pump.  The pump had been stopped the previous day due to plaintiff's complaints of edema, however because plaintiff had a withdrawl response the pump was reprogrammed and refilled.  The pump continued to be reprogrammed and refilled regularly from September 2003 through March 2004. (Id.)

An October 2003 physical examination by Dr. Brosman revealed tenderness in plaintiff's legs and lower abdomen.  She was diagnosed with lumbar degenerative disc disease, fibromyalgia, chronic anxiety disorder and postural hypotension. (Id.)

In December 2003, after treating plaintiff for one year, Dr. Brosman reported that plaintiff's narcotic infusion pump had been inadequate to control the claimant's pain, and opined that plaintiff was unable to maintain full time employment due to the nature of her pain. (Id.) Also in December, Dr. Brosman changed the medication in the pump to Demoral.  After this change, plaintiff reported she was doing better overall and that her muscle spasticity and edema were improved. (ALJ decision 20-1.)

In January 2004 plaintiff was admitted to Hilton Head Regional Medical Center Emergency Room for intractable nausea and pain.  She was given Ativan and released the following day.  Plaintiff also asked that Dr. Brosman remove her morphine pump in January 2004. (ALJ decision 21.)

In May 2004 Dr. Brosman stated that plaintiff continued to lack the ability to perform substantial, gainful activity, because her pain level continues to increase due to the failure of her morphine pump.  He further stated that plaintiff experienced excessive leg, foot and sciatic pain, balance problems, swelling and pelvic pain.  Dr. Brosman concluded that it was unlikely that the claimant would ever be able to perform any type

of employment in the future, and if she were to go back to work she would be absent more than three times a month due to her impairments. (Id.)

### III.  ALJ'S FINDINGS

The ALJ's decision addressed the opinions of Dr. Brosman:

> The undersigned rejects Dr. Brosman's opinion that the claimant is not capable of any work. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.
>
> More importantly, Dr. Brosman's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. While his own examinations fail to place restrictions on the claimant's physical activity, Dr. Brosman limits the claimant to less than a full range of sedentary work in his Residual Functional Capacity Assessment.
>
> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

(ALJ decision 22-23.)

The ALJ made the following findings after considering the evidence from the hearing and in the record:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

6

3.  The claimant's fibromyalgia, lumbar and cervical radiculitis, and degenerative disc disease are considered "severe" in combination based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).

4.  These medically determinable impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.

6.  The claimant has the residual functional capacity to perform light, unskilled work with restrictions.

7.  The claimant is unable to perform any of her past relevant work (20 C.F.R. § 404.1565).

8.  The claimant is a "younger individual between the ages of 45 and 49" (20 C.F.R. § 404.1563).

9.  The claimant has a "high school education" (20 C.F.R. § 404.1564).

10. Transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a: cashier II (This is unskilled light work with 1,000,000 jobs existing in the national economy); an attendant at a self-serve gas station (This is unskilled light work with 500,000 jobs existing in the national economy); or a parking lot attendant (This is unskilled light work with 40,000 jobs existing in the national economy).

13. The claimant was not under "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(g)).

(ALJ decision 26-27.) The magistrate judge took exception to these findings[1] and recommended reversing the ALJ's decision and remanding the case back to the Commissioner to award benefits to plaintiff.

## IV.  SCOPE OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report to which a specific, written objection is made. 28 U.S.C.A. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify the Report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C.A. § 636 (b)(1).

Although this court may review the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by

---

[1] The magistrate judge found that the ALJ improperly dismissed the treating physician's opinion and failed to explain his findings in the RFC decision. (Report at 9.)

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if h[er] decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

## V.  ANALYSIS

The Commissioner claims that the magistrate judge exceeded the scope of judicial review and re-weighed the evidence in the case. First, the Commissioner argues that the ALJ's decision in discounting the opinion of Dr. Brosman, the treating physician, was legally correct and supported by substantial evidence. Second, the Commissioner argues that the magistrate judge was incorrect in determining that the ALJ erred in finding that plaintiff could perform a limited range of light work despite her impairments. Finally, the Commissioner argues that if the court determines substantial evidence does not support the ALJ's decision, the proper remedy is to remand the case for further

proceedings.

According to 42 U.S.C. § 423(a), the Social Security Act provides that disability benefits shall be available to persons insured for benefits, who are not of retirement age, properly apply, and are "under a disability." Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> [T]he inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

The Social Security Regulation established a five step sequential evaluation for the adjudication of disability claims. An examiner must determine whether the claimant: (1) is participating in substantial, gainful activity; (2) has a severe impairment that meets the duration requirement of § 404.1509, or a combination of impairments that is sever and meets the duration requirement; (3) has an impairment(s) that meets or equals one of the listings in Appendix 1 and meets the duration requirement; (4) has the ability to still do past relevant work; (5) has the ability to make the adjustment to other work. 20 C.F.R. § 404.1520 (West 2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Should the claimant meet the standards of this evaluation through step four, the burden shifts to the Commissioner to prove whether the claimant is able to perform other forms of substantial gainful activity, considering the claimant's remaining physical and mental capacities and the claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (West 2006). The Commissioner must establish two things: (1) that the claimant, considering age, education, work experience,

skills and physical shortcomings, has the ability to perform alternative employment, and (2) that the alternative employment exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

For the purposes of this order, the first four inquiries are not in dispute. The only question remaining is whether the ALJ correctly assessed plaintiff's current and future physical and mental condition in determining whether plaintiff could still perform other forms of substantial, gainful activity; specifically, whether the ALJ gave appropriate consideration to Dr. Brosman's assessment of plaintiffs residual functioning capacity.

### a.     The ALJ improperly disregarded the opinion of Dr. Brosman, plaintiff's treating physician.

The Fourth Circuit states "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R.§ 416.927). However, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Zarkowski v. Barnhart, 417 F.Supp.2d 758, 764 (D.S.C. 2006) (citing Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996)).

The rule on controlling weight applies when all of the following are present: (1)

11

the opinion must come from a "treating source,"[2] (2) the opinion must be a "medical opinion,"[3] (3) the adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, and (4) even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record. (SSR 96-2p).

> Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper. This court has long required specific references to the evidence supporting an ALJ's decision as part of the ALJ's duty of explanation.

See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994) (internal citations omitted).

The ALJ rejected Dr. Brosman's opinion because of the possibility that the doctor expressed an opinion in an effort to assist a patient he sympathized with, and to avoid unnecessary tension between the doctor and patient. (ALJ decision at 22.) This decision is unfounded by any evidence of record. It is simply the ALJ's opinion of a

---

[2] "Treating source means your own physician, psychologist, or other acceptable medical source, who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R.§ 404.1502.

[3] "Medical opinions are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight." 20 C.F.R.§ 404.1527(a).

12

doctor/patient relationship and should not have been given any consideration in determining whether Dr. Brosman's opinion should be given controlling weight. The ALJ's decision is contrary to the "treating physician's rule" which should be given controlling weight in this matter.

The ALJ also stated that Dr. Brosman's opinion is without substantial support from the other evidence of record. (ALJ decision at 22.)  As noted, the treating physician's opinion controls unless it is not supported by clinical evidence or if it is inconsistent with other substantial evidence. Zarkowski 417 F.Supp.2d at 764.  The Social Security Rulings state that "not inconsistent" is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence as long as there is no substantial evidence in the case record that contradicts or conflicts with the opinion. (SSR 96-2p).  The only record that does not support Dr. Brosman's medical evaluation is that of Dr. Stern, who only met with plaintiff once in June 2001.  During this visit, Dr. Stern reported that plaintiff suffered from symptom magnification. (ALJ decision at 18.)  Dr. Stern's conclusion is not substantial evidence.  Substantial evidence is "more that a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971).

In contrast to Dr. Stern's opinion, Dr. Brosman's opinion is supported by the reports of plaintiff's previous physicians, including Dr. Smallwood and Dr. Eads, who also stated that plaintiff suffered lower back pain, lumbar radiculiltis, sacrolitis, sacroiliac strain, and a tender pelvis. (ALJ decision at 18.)

13

For the aforementioned reasons, this court agrees with the magistrate judge's opinion that the ALJ erred in rejecting Dr. Brosman's opinion.

### **b.**      **The ALJ erred when it he concluded plaintiff could do "light, unskilled" work.**

In his decision, the ALJ stated that plaintiff has the residual functional capacity ("RFC") to perform light, unskilled work which includes the following: "frequently lifting/carrying 10 pounds; occasionally lifting 20 pounds; never crawling, crouching, climbing, squatting or kneeling; occasionally stooping and bending; and never using her lower extremities for pushing or pulling. She would require a sit/stand option." (ALJ decision at 24.) In Rogers v. Barnhart, the Western District of North Carolina stated:

> In SSR 96-8p, the regulation provides that the assessment of residual functional capacity must be based on all of the relevant evidence, considering all allegations of physical and mental limitations or restrictions. When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity and no information in found in the record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

Rogers v. Barnhart, 204 F. Supp.2d. 885, 889 (W.D.N.C. 2002) (citing SSR 96-8p).

Because the ALJ improperly dismissed the opinions of Dr. Brosman, the ALJ's assessment of plaintiff's RFC is also improper. Furthermore, the ALJ does not state how he came to the conclusion that plaintiff was capable of frequently lifting/carrying 10 pounds, occasionally lifting 20 pounds, and sitting/standing for extended periods of time.

The opinion of the vocational expert is also invalid, because the criteria given to

the expert did not include Dr. Brosman's opinion.  Based on Dr. Brosman's opinion, plaintiff experiences excessive leg, foot and sciatic pain, balance problems, swelling and pelvic pain.  Furthermore, plaintiff is very limited because of her injuries, and if she were to obtain employment anywhere she would likely miss more than three days a month. (Assessment Report  at 504-7.)

This court agrees with the magistrate judge's opinion that the ALJ erred in determining that plaintiff, based on her RFC, could perform "light, unskilled" work.

### c.       Remand is not necessary in this decision.

The Commissioner argues that if this court concludes that it cannot affirm the ALJ's decision, the court should remand the case to the Commissioner for further proceedings. (Def.'s Ob. at 3.)  This court disagrees.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405.  Furthermore, Fourth Circuit precedent holds that it is "appropriate to reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974) (internal citations omitted).  This court finds that both circumstances are present, and it "will not delay the case further by remanding to the [Commissioner] on this issue." Id.

## VI.  CONCLUSION

For the reasons stated above, as well as in the magistrate judge's Report and Recommendation, it is therefore **ORDERED** that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and judgment be entered for plaintiff, with directions to the Commissioner to pay her the benefits to which she is entitled under the law and regulations.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 21, 2006**
**Charleston, South Carolina**

16